Thank you. May it please the Court, Andrew Kintzler here on behalf of Dr. Martin. I'd like to reserve three minutes for rebuttal. I'll use seven minutes for the argument. Obviously this case is Lundberg v. TSI, and it perhaps comes before this Court on a somewhat unusual posture because neither of the parties is here on appeal. It's my client, Dr. Martin, an expert witness in the case, who is challenging a sanction that was issued against him and asking to have his good name returned to him. Dr. Martin is challenging the finding by the trial court that he committed something that was tantamount to bad faith or expert misconduct. The issue presented is whether an expert who testifies as to his own opinions and conclusions must disclose in his report that another person provided the expert with some publicly available information that was fully disclosed, the publicly available information was fully disclosed by the expert in his report. Maybe you could zero in on the portion of your client's testimony that caused, I guess essentially set off the alarm bells for the district court, right? Because it was his, I think it was on cross-examination, he said something in reference to another expert type person. Oh yes, and on this particular case I consulted with that person. I think that's what triggered concern on the district court's part, so maybe you can zero in on that. Absolutely, I welcome that opportunity. It's in the evidence record at pages 67 and 68, transcript pages 63 and 64. Dr. Martin was asked about whether he had designed a wet electrostatic precipitator, I think I'll just call it the product from now on, whether he had designed the product since 2010. And he said no, he hadn't participated in designing such a product since 2010. And then he was asked another question about it, and he gave an answer. And then he was asked the following question, and that was before 2010, correct? And then he's sworn to tell the truth, the whole truth, and nothing but the truth in answering questions. And so he's now being asked on cross-examination a question about a design of the product, which he did not testify to on direct. On direct, his testimony was limited to the trade secret issues. In other words, were the trade secrets claimed by Lundberg secrets, or were they publicly available information? And he went through and described a number of patents that were expired, and therefore become publicly available information, these expired patents that demonstrate all of the elements that were claimed as trade secrets. So he testified in his direct testimony about that publicly available information. But now on cross, he's being asked about design and what information, what exposure he's had to design. And so he was asked whether his design experience was before 2010. And he said, I have to correct my earlier statement. Swear to tell the truth, the whole truth, and nothing but the truth. I need to correct my earlier statement. I've continued to be in contact. In fact, I consulted with that individual on this case as well, an individual who has direct experience on designing the product. And it was prior to his report. So he said, I consulted with that individual on this case. Well, okay, but just so stopping there, I mean, you can understand why the district court might have had some concern, because the judge says, well, look, I got the report here. I don't see any reference to that consultation. And then he was questioned in detail on this issue by the court, and he said that person didn't do any calculations, didn't provide him with any information. Nobody did that. He said he didn't think it was important enough to rise to the level of an expert giving me his opinion and me testifying as though it were mine. In other words, he's given a report that's limited to the publicly available information about this design, and then on cross he's asked about something that was not in his report, that was not part of his opinions, that he had not considered in giving his opinions, and he testified honestly about something that had occurred. And what he testified in he didn't testify, but when he was questioned by the trial court, he said, yeah, I talked to him about a sharp edge on an electrostatic precipitator, but I didn't testify about that. My testimony had nothing to do with that. Sharp edge or corners. Sharp corner, yeah, a sharp corner on a, I think, on a washer. The trial court. Counsel, since time is fleeting, you went ahead to say, and this dealt with standing, that just because the district court's striking of the testimony is intertwined with appealable harms, that Dr. Martin now has standing to appeal the striking. What's your authority for that? Well, Dr. Martin has testimony, has standing to not to attack the striking of the testimony, but the sanction that was put against him, the finding that he acted in, that he conducted, his conduct consisted of misconduct or bad faith. He was told that he would have to, he was told this is the death knell for your career as an expert witness, and then he was told that he would have to report that going forward. Now, the court vacated that portion, but then said, however, to the extent that your professional ethics require you to disclose it, you still have to, and he believes his ethics require him to still disclose that. So he believes, under his ethical rules, that he is under an obligation to disclose this, and he has lost his career as an expert witness, and lost his good name, which I believe gives him standing to then attack that ruling by the trial court. Then how do you get around this court's holding that reputational harm does not confer standing? What other injury has Dr. Martin suffered as a result of the district court striking his testimony? Well, the injury that he suffered is the injury of being required in the future, due to his ethical standards, to disclose this finding. And I think if we look at the trial court's ruling on the motion for reconsideration. What was the specific finding that you're referring to? What words were used by the district judge? Initially, the district judge said to the extent required by your professional responsibilities, you will still have to disclose this. Disclose what? The transcript, the fact that there was a disagreement with, you know, that he had a disagreement in terms of the materiality of his testimony. Your client was hired three days before the expert report was due? Correct. And the district judge made a finding of bad faith based upon omissions in something that was prepared during a three-day interval, correct? Correct. I don't understand the materiality of the alleged omission of the particular expert or person that he talked to concerning the sharp corners. Because to me, if you do something that you should have, you don't disclose something you should have, you want to know how important it was. So was it material? No. Okay, why? Because it was not part of his opinions. So it was not material under Rule 26A to B. It was not his opinions, the basis for them, and it was not part of the facts or data considered in forming them. So it was not material, and yet the trial court, when we explained this in detail in our motion for reconsideration, the trial court accepted that Dr. Martin listed all of the materials and performed his own review and analysis of those sources, and yet said the omission of the subcontractors constitutes conduct tantamount to bad faith, and so ordered on the motion for reconsideration. And that is, I think, if we look at Rule 26. Did the trial court ever make a finding that connected the omission with materiality? It's bad faith because this was significantly important enough that it had to have been disclosed. Was that connection ever made? I don't believe so. But the finding was still made that my client committed conduct tantamount to bad faith, which I believe is unsupported by the record. Can I ask you one question before you sit down? Sure. And we'll give you a couple minutes for a vote. Thank you. On the standing question, your client was also ordered, I think, to repay the fees that he had earned? Yes, he was. Did that in fact happen? Yes, it did. Okay. So if we were to overturn the district judge's ruling, I suppose there might be some prospect that he could get back his fees? Dr. Martin is yes. Okay. Thank you. All right. Let's hear from the other side. Good morning. May it please the Court, my name is Tiffany Scott Connors, and I represent Apelli Lundberg. The issue before the Court today is, did the district court abuse its discretion in personally sanctioning Dr. Martin? The Court does not have to address the striking of Dr. Martin's testimony. I will discuss that today, and I will also address the materiality of Dr. Martin's reliance on another expert. Can I ask you one preliminary question? If we were to conclude that we don't need to, as you just said, worry about the striking of the testimony, that that issue is sort of off the table at this point, then you don't really have any reason to be here, right? You could care less, I assume, whether the sanction stands. Is that fair? Lundberg's stake in this is protecting the integrity of its trial record. So yes, our limited interest here is in the striking of testimony. All that we're here to do today is to support Judge Robart's decision to exclude the testimony. Under the Federal Rules of Appellate Procedure, the amicus curiae standard also provides some instruction here, I think, because that says a non-party, although we're a party, it's an unusual context, may appear when they have an interest in the appeal, which we do, again, protecting the record. Well, you don't. That's why I was just asking. Because I don't, frankly, see how we could touch the exclusion of the testimony. The party who was harmed by that is not here, hasn't appealed. The judgment's become final. As I understand it, it's been paid. So there's no unraveling of the final judgment that I think we could order. And if that's true, I don't know what my colleagues think about that, then you really don't have any interest in being here, right? I preliminarily agree with your assessment. That the striking is not at issue? Correct. I don't know how it could be. Then I can sit down. I'm also happy to provide. No, no, you're here. We'd like to hear from you. But I just wanted to get that straight. That's the sole extent of your interest in being here, is to make sure that we don't say something about the testimony shouldn't have been excluded. That's exactly correct. Okay, great. Let's hear from you. With regard to your question about the context and the materiality, I think that's a crucial point here, is to understand the context of Dr. Martin's testimony and how Judge Robart characterized it. The reliance on this other expert was material. On direct examination, Dr. Martin said, I went to the patent literature myself and I examined the patents, and then he proceeded to walk the jury through all of these patents that he said were relevant to Lundberg's, my client's, trade secrets. And then on the first question on cross-examination, which was essentially asking him, well, you haven't really worked with this technology, have you? He said, I have done so, but only through my consultation with my colleague. So it's a little bit like a sword and a shield. When Judge Robart questioned him, he said, I understand the dilemma here. It's of the nature of another engineer working as my report. So it was me asking him to do work as if he were my report. Again, that to us is material rather than clerical or administrative. That doesn't really answer the question of materiality. You just sort of stated that you think it's material, but it's not unusual for experts to consult with treatises, to talk to people. They can do a lot of things. The question is, really, was there bad faith and was there some omission that rose to the level of a misrepresentation? I'm having trouble understanding the connection in the abstract. Right. I think the issue for Judge Robart was he said, we don't know whether any of this is reliable now because what he said was, at this point, I have no idea how accurate this is or isn't because he doesn't bother to tell us how it was developed. And so it was the context of this consultant, this expert in electrostatics, and I think the technology is important. Dr. Martin says, well, this expert was an expert in electrostatics. I didn't talk about electrostatics at trial. But the trial was about protecting Lundberg's trade secrets in a wet electrostatic precipitator. And Dr. Martin was the technical expert on that technical subject. So it was the foundational theory behind the technology itself. And when Judge Robart was talking about that, he says, it was taking information and then not disclosing in your report that that ever took place. The report fails to disclose significant material information which was required to be disclosed. And I believe that is the reliance on this other expert in electrostatics, which is the... About what? Well, that's the problem. I agree with you. We don't know what conversations took place. And so it gets to this threshold issue of reliability. And the trial court did not get into details about making that nexus, correct? That's correct. I don't believe that that necessarily opens the door to interpreting the bounds of Rule 26A2B2, which is a very specific inquiry that Dr. Martin has redirected the court to now. Judge Robart didn't get into specifically that portion of the rule. I think the overall point was, whether you want to say that this was an opinion or the basis and reasons for the opinion or the facts and data considered, it's somewhere in this broad duty to disclose. And that was what bothered the district court. But there's no duty to disclose beyond what Rule 26 explicitly provides, right? There's no... Is there some other source? No. Yeah. So, okay. So I don't understand. How could the judge make, especially how could the judge make a finding of bad faith on Dr. Martin's part if we didn't first figure out what does the rule require to be disclosed? I think part of that was going to Rule 26 and saying, no matter what kind of semantics you want to sort of play to say it's an opinion or it's a fact, it's somewhere captured in Rule 26 and the broad disclosure requirement, but also the motion in limine order, which Judge Robart mentioned several times. And the motion in limine order was that if it was not in Dr. Martin's report, he was not to testify to it. He didn't, right? I can't remember. Was this your witness on cross-examination? It was not. It was not, okay. It was the colleague's. Yeah. But is your opponent here correct in saying that actually the thing that he was asked about on cross-examination that caused the alarm bells to go off in the judge's mind, that wasn't even part of his testimony. Is that accurate? I don't think that that is accurate. This was the first question on cross-examination. The first question was, the first thing I wanted to ask you about is your experience with wet electrostatic precipitators, and that was the technology at issue, whether Lindbergh had trade secrets in that. And he said, isn't it true that your prior experience with wet electrostatic precipitators was to consult as to a fire or an explosion? In other words, in a different context separate than what this trial is about. And in response to that question, Dr. Martin said, well, predominantly I've also worked with another consultant who is a specialist in the design. So . . . Okay. So what is it that was divulged by this other expert to Dr. Martin that you say fits within what Rule 26 requires to be disclosed? It's a difficult question to answer because we don't know what the other consultant divulged. Doesn't that just right there mean there's not an adequate record to support the judge's finding? I would think you'd have to be able to give us a very specific answer about, this is what that person, this is the information that was relayed, and here's why it fits within the four corners of Rule 26. All we know is that that person identified patents to Dr. Martin, went to the patent literature on wet electrostatic precipitators as this expert in electrostatics, and pulled the patents that he thought were relevant. And what Dr. Martin says is, some of them I found helpful and some of them I didn't, but he did the research for me, and then I considered the research. And if that's all that this other expert did, you think that's required to be disclosed under Rule 26? I think on the limited facts of this case, where you're having someone appear before the jury to walk them through those patents that were identified and explained to you by somebody else, by someone who the expert himself says, well, he's really the expert in electrostatics, yes, I do believe that Rule 26. Do you have any authority that supports your view that 26A2B requires this? Is there any case out there that supports your view? Again, limited to these facts, I can't point you to one case that goes one way or the other. What I think, I mean, Rule 26 is meant to provide disclosure. Disclosure is meant to be broad. Disclosure is meant to prevent exactly what happened here, which is surprise at trial. And under the guidance from Rule 37, if you didn't disclose it, you can't use it, right? So sticking to the instruction of the law, that's where we are today. Again, we're only here on the striking of the testimony, which I'm happy to hear that the court does not believe is at issue. On the bounds of Rule 26, we also don't think that Judge Robart committed an abusive discretion there, but we take no position as to the personal sanctions against Dr. Martin. All right. Thank you very much. Thank you. We will give two minutes for rebuttal to counsel for Dr. Martin. Thank you. I think that the issues have been well understood by the court and well examined. I would just like to respond to some of the colloquy that just occurred, and I think we're distinguishing between the discussions that the judge had with Dr. Martin at trial and then the motion for reconsideration when Judge Robart had time to read an exhaustive declaration, and he said that Dr. Martin has comprehensively explained his actions and decisions. And then Judge Robart goes on to say Dr. Martin listed all of the materials in his report and performed his own review and analysis of those sources. That's the finding we have from the trial court with respect to what Dr. Martin did. And there's just, when you read Rule 26a to b, I just don't see that there was any more that Dr. Martin needed to disclose with respect to his opinions and that his report did not constitute misconduct or bad faith. He was deposed before he testified. Correct. And could have been asked questions about did you talk to anyone. That certainly was fair game. That did not happen. In other words, they didn't ask him those questions. And that's not his fault. I mean, as an expert, he answers the questions he's asked. Thank you. All right, thank you. Case just argued will be submitted.
judges: D.W. Nelson, Watford, Pregerson